**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| CAROL ANNE SMITH | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:16-cv-03113-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| BISHOP GADSDEN EPISCOPAL RETIREMENT COMMUNITY, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

This matter is before the court on defendant Bishop Gadsden Episcopal Retirement Community's ("Gadsden") motion for summary judgment. ECF No. 29. For the reasons set forth below, the court denies Gadsden's motion for summary judgment.

## I. BACKGROUND[1]

Plaintiff Carol Anne Smith ("Smith"), who is African American, began working for Gadsden as a "CNA"[2] on May 16, 2013. Am. Compl. ¶¶ 10, 12. A short time thereafter, Smith was promoted to "concierge." Id. ¶ 12. Gadsden's then-Director, Ryan Coker, promised Smith an hourly raise and a monthly bonus based on commission, which was scheduled to go into effect on September 15, 2014. Id. ¶¶ 12, 13. Shortly thereafter, Ryan Coker resigned and was replaced by Marissa Ferguson ("Ferguson"), a Caucasian woman. Id. ¶ 13. Smith was never given the promised hourly raise and monthly commission. Id. ¶ 16, 17. When Smith discussed this issue with Ferguson, as well as

---

[1] Unless otherwise specified, the facts in this section come from Smith's complaint.

[2] Smith does not define this term in her complaint, but the court presumes she was employed as a Certified Nursing Assistant.

1

with Gadsden's Director of Payroll and Director of Human Resources, she was simply told that Ferguson could not determine the amount of Smith's bonus. Id. ¶ 15.

Aside from Gadsden's failure to pay the agreed-upon raise and commission, Smith claims she was also subjected to disparate treatment during her employment, receiving reprimands for the same actions that other, Caucasian employees engaged in without any repercussions. Id. ¶¶ 18, 19. Smith was ultimately terminated on January 5, 2016. Id. ¶ 26. Gadsden provided other reasons for the termination, but Smith alleges that her termination was Gadsden's retaliation for her reporting the payment discrepancies and racial discrimination, as well as for a worker's compensation claim she had commenced following a work-related injury. Id. ¶ 25, 27.

Smith filed the instant action on September 14, 2016, and filed an amended complaint on March 23, 2017. The amended complaint brings the following claims: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) et seq. ("Title VII") and the Equal Employment Opportunity Act ("EEOA"); (2) retaliation for Smith complaining to Gadsden about racial discrimination, in violation of Title VII and the EEOA; (3) hostile work environment, in violation of Title VII; (4) violation of the South Carolina Payment of Wages Act, SC Code of Laws § 41-10-40, for refusing to pay Smith for wages due; (5) violation of the federal Fair Labor Standards Act ("FLSA"), for failing to pay the wages owed to Smith; (6) conversion; and (7) retaliatory discharge in violation of SC Code of Laws § 41-1-80, as amended. Id. ¶ 32–81.

On April 6, 2017, Gadsden moved to dismiss Smith's FLSA and conversion claims. ECF No. 21. On April 20, 2017, Smith filed a response, conceding that she had

failed to state a claim under the FLSA, but arguing that her conversion claim should go forward. ECF No. 23. On May 24, 2017, the court dismissed the conversion claim without prejudice. ECF No. 28. On July 6, 2017, Gadsden moved for summary judgment on Smith's remaining claims. ECF No. 29. Smith responded on July 20, 2017, ECF No. 32, and Gadsden replied on July 27, 2017, ECF No. 33. This motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012).  However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191.  Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).  If the adverse party fails to provide evidence establishing that the fact-finder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III.   DISCUSSION

Gadsden moves for summary judgment, claiming that the doctrine of judicial estoppel bars Smith from bringing claims in this court that she concealed before the United States Bankruptcy Court ("Bankruptcy Court").  Def.'s Mot. 1.  Gadsden contends that Smith's failure to disclose to her actual legal claims against Gadsden to the Bankruptcy Court essentially represented to the Bankruptcy Court that those claims did not exist.  Id. at 9.  According to Gadsden, therefore, Smith's assertion before this court that she has valid claims against Bishop Gadsden "is a factual assertion inconsistent with her previous position in the Bankruptcy Court that she had no contingent or unliquidated claims."  Id. at 10 (internal quotations omitted).  In response, Smith asserts that she did in fact disclose her potential wrongful termination claim to the Bankruptcy Court.  Pl.'s Resp. 7.

An undisputed timeline of key events is helpful in understanding Gadsden's argument.  On January 6, 2016, Smith was terminated by Gadsden.  On April 11, 2016, Smith completed an Intake Questionnaire with the EEOC stating her intent to file a charge against Gadsden.  On April 18, 2016, Smith filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the District of South Carolina.  Def.'s Mot. 4, Pl.'s Resp. 5–6.  On June 9, 2017, Smith filed a charge against Gadsden with the EEOC.  Smith filed her complaint in this case on September 14, 2016, and then filed an amended complaint on March 13, 2017.

"Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation . . . to protect the essential integrity of the judicial process."  John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28–29 (4th Cir.

5

1995).  "Judicial estoppel is a doctrine distinct from the res judicata doctrines of claim and issue preclusion."  New Hampshire v. Maine, 532 U.S. 742, 742 (2001).  In Lowery v. Stovall, the Fourth Circuit laid out a four-factor test to help courts determine when to apply judicial estoppel: (1) a party must be attempting to adopt a position before the current court that is inconsistent with a stance taken in prior litigation; (2) that position must be one of fact, not law; (3) the prior court must have actually accepted the inconsistent position; and (4) the party to be estopped must have intentionally misled the court to gain an unfair advantage.  92 F.3d 219, 224 (4th Cir. 1996).  This last factor is determinative, and "judicial estoppel will not be applied where the party's inconsistent positions resulted from inadvertence or mistake."  King v. Herbert J. Thomas Mem'l Hosp., 159 F.3d 192, 196–97 (4th Cir. 1998).  In addition to being intentional, a party's later position must be "clearly inconsistent" with its earlier position.  See New Hampshire v. Maine, 532 U.S. 742, 743 (2001) (applying judicial estoppel because New Hampshire's factual assertion about a river boundary was "clearly inconsistent" with its factual assertion during prior litigation about that boundary).  For judicial estoppel to be applied, a party must be attempting to assert an inconsistent factual position, not merely a different legal theory or an elaboration of a prior allegation.  See Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 118 (4th Cir. 2013) (finding no judicial estoppel because the appellant's amended complaint presented the same factual position as in its prior complaint, but "merely elaborate[d] on the allegation in the original complaint"); King v. Herbert J. Thomas Mem'l Hosp., 159 F.3d 192, 196–97 (4th Cir. 1998) (finding that King was judicially estopped from asserting before the court that she was "able and competent" to perform her previous job because she had previously represented to the

6

Social Security Administration the inconsistent fact that she had a severe impairment that made her unable to do her previous work). "As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court and with the recognition that each application must be decided upon its own specific facts and circumstances." King, 159 F.3d at 196.

At least one district court has found that failure to disclose an EEOC claim to a Bankruptcy Court judicially estops a party from later asserting before a federal district court that it has a personal injury claim against its employer. Vanderheyden v. Peninsula Airport Comm'n, 2013 WL 30065 (E.D. Va. Jan. 2, 2013). In Vanderheyden, the plaintiff had filed a charge against her employer with the EEOC eight months before filing a voluntary Chapter 7 Bankruptcy Petition. Id. at *1. The court found that Vanderheyden was judicially estopped from asserting an employment discrimination claim before the district court, because she had intentionally failed to disclose her EEOC charge and other potential claims against her employer in her bankruptcy petition or before the Bankruptcy Court. Id. at *12–14.

Gadsden argues that judicial estoppel bars Smith from asserting before this court that she has claims against Gadsden, because she failed to assert that "fact" to the Bankruptcy Court in her prior proceeding there. Def.'s Mot. 7. According to Gadsden, it is irrelevant that Smith had not yet filed her EEOC charge or district court lawsuit against Gadsden at the time she filed her bankruptcy petition, because "the debtor's duty to disclose does not end once the petition and related forms are submitted to the bankruptcy court[, but] continues through the pendency of the bankruptcy proceeding and requires the Plaintiff to amend h[er] financial statements if h[er] situation changes." Def.'s Mot. 8

(quoting Robertson v. Flowers Baking Co. of Lynchburg, LLC, 2012 WL 830097, at *3 (W.D. Va. Mar. 6, 2012)).  Gadsden contends that the remaining Lowery factors are met because the Bankruptcy Court accepted Smith's first position by administering her bankruptcy without knowing of her actual legal claims against Gadsden, and because Smith "intentionally misled the Court to gain an unfair advantage." Def.'s Mot. 10–12.

    In support, Gadsden points to three portions of Smith's bankruptcy petition where Gadsden believes that Smith should have disclosed the fact that she had claims against Gadson but did not.  First is #33 under Schedule A/B, which asks the petitioner to list "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment.  Examples: accidents, employment disputes, insurance claims, or rights to sue."  ECF No. 29-7, Schedule A/B #33.  Smith marked "yes" on the form, and listed the following claims: "Wrongful termination claim–represented by Wigger Law Firm" and "Worker's compensation claim–represented by Attorney Alan Tanenbaum."  Id.  Gadsden argues that this response fails to put the Bankruptcy Court or Smith's creditors on notice that Smith has potential Title VII claims and an SCPWA claim against a third party, let alone against Bishop Gadsden, since no defendant was mentioned.  Def.'s Mot. 13.  The court disagrees.  Smith's disclosure for #33 sufficiently represented to the prior court the fact that she had claims against Gadsden.  While Smith only listed "wrongful termination" and "worker's compensation" in her bankruptcy petition rather than all seven causes of action that she later raised in the complaint before this court, both the claims referred to in Smith's bankruptcy petition and her current claims before this court arise from the same set of facts—namely, Gadsden's reasons for and conduct during the termination of Smith's employment.  The phrases "wrongful termination" and "worker's

compensation" represented to the Bankruptcy Court that Smith had claims arising out of her termination from employment. Smith also asserts before this court that she has claims arising out of her termination for employment. The only difference is that, currently before this court, Smith argues several different causes of action upon which she can seek relief for her claim that she was mistreated at her workplace and wrongfully terminated. This is not a clear inconsistency and does not support a finding of judicial estoppel.

Next, Gadsden points to #34 in Schedule A/B of Smith's bankruptcy petition, which requires the applicant to disclose "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor and rights to set off claims." ECF No. 29-7, Schedule A/B #34. Gadsden finds it significant that Smith responded "none" to this question, emphasizing how this petition was signed by Smith under penalty of perjury. Def.'s Mot. 4. However, it appears unnecessary for Smith to have answered "yes" to question #34, because it asks about "other" claims of any nature. In the immediately preceding question #33, Smith disclosed her claims for wrongful termination and worker's compensation. The fact that she did not re-list them in the next question asking about "other" claims does not indicate an intent to conceal the claims from the Bankruptcy Court.

Finally, Gadsden contends that Smith should have listed all of her causes of action under #9 in the Statement of Financial Affairs section of her bankruptcy petition, which asks "[w]ithin 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?". ECF No. 29-7, Statement of Financial Affairs, #9. This question then directs the application to "[l]ist all such matters, including

9

personal injury cases, small claims actions, divorces, collection suites, paternity actions, support or custody modifications, and contract disputes." Id.  In response to this, Smith lists another unrelated case pending in Dorchester County Magistrate's Court.  Id. Gadsden finds it problematic that Smith failed to disclose under #9 that she had submitted an Intake Form to the EEOC.  Def.'s Mot. 5.  The court disagrees and finds that because Smith disclosed the "wrongful termination" and "workers' compensation" claims in response to Schedule A/B question #33, the fact that she did not reiterate them under Statement of Financial Affairs question #9 does not indicate that Smith intentionally misled either the Bankruptcy Court or the present court to gain an unfair advantage.  This is especially the case considering that Smith had not been a party to any lawsuit or administrative proceeding in the "year before filing for bankruptcy," because she had not yet filed a charge with the EEOC or filed a claim in this court when she filed her bankruptcy petition.

      This current case differs from Vanderheyden, in that Smith listed her wrongful termination and workers' compensation claims in her bankruptcy petition, while Vanderheyden failed to make any reference in her bankruptcy petition to the claims she had against her employer.  Unlike in Vanderheyden, Smith did not make a clearly inconsistent prior factual claim before the Bankruptcy Court, and judicial estoppel does not bar Smith's claim.  Therefore, the court denies defendant's motion for summary judgment.

## IV.   CONCLUSION

For the reasons set for above, the court **DENIES** Gadsden's motion for summary judgment, ECF No. 29.

**AND IT IS SO ORDERED**.

                                      **DAVID C. NORTON**
                                      **UNITED STATES DISTRICT JUDGE**

**October 31, 2017**
**Charleston, South Carolina**